UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Derek J. Hughes

    v.                                                 Civil No. 17-cv-235-JD
                                                    Opinion No. 2018 DNH 026
Nancy A. Berryhill,
Acting Commissioner,
Social Security Administration


O R D E R

Derek J. Hughes seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of Social Security, denying his application for disability benefits and supplemental security income under Title II and Title XVI of the Social Security Act. Hughes moves to reverse on the grounds that the Administrative Law Judge ("ALJ") erred in finding that he was not disabled by physical and mental impairments. The Acting Commissioner moves to affirm.

Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's

factual findings as long as they are supported by substantial evidence.  § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016).  Substantial evidence is "more than a mere scintilla."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  When the record could support differing conclusions, the court must uphold the ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion."  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted).

## Background

Derek Hughes applied for social security benefits, alleging that he had been disabled due to bipolar disorder since July 21, 2012, when he was twenty-eight years old.  His medical and treatment records demonstrate a long history of mental illness, with repeated episodes of suicide attempts and ideation.  The records also show that Hughes is morbidly obese.

After a hearing in June of 2014, the ALJ found that Hughes had a severe bipolar disorder but was not disabled.  The Appeals Council, however, sent the case back to the ALJ for further proceedings because the decision did not adequately address the limitations resulting from bipolar disorder, was vague as to the limitations Hughes would experience in working with others and

dealing with change, and did not address what effect Hughes's morbid obesity would have on his physical and mental health. The Appeals Council directed the ALJ to consider Hughes's obesity, evaluate his mental impairments in accord with 20 C.F.R. § 404.1520a, further consider Hughes's residual functional capacity in accord with specified Social Security Rulings, and if necessary obtain evidence from a vocational expert.

On remand, a second hearing was held before the same ALJ in May of 2016. The ALJ issued a decision on June 29, 2016, again finding that Hughes was not disabled. In support, the ALJ found that Hughes had severe impairments due to bipolar disorder, personality disorder, and polysubstance abuse in remission. He explained that obesity was not a severe impairment because of a lack of evidence that it caused work-related limitations. The ALJ found that Hughes has a residual functional capacity to do all work at all exertional levels, with a limitation that he could work with others as long as that were only a small part of the job. The ALJ further found, based on the testimony of a vocational expert, that although Hughes could not do his past work as a cook and a telephone sales representative, he could work as an industrial cleaner, a housekeeping cleaner, and an assembler.

Hughes sought review by the Appeals Council and submitted additional evidence. The new evidence consisted of statements from Dr. Robert A. Murray, Hughes's treating psychiatrist, and records from Northern Human Services, beginning in February of 2012 and through August of 2016. The Appeals Council stated that the evidence that was generated before the ALJ's decision would not change its outcome and that the new evidence could not affect the decision because it pertained to Hughes's treatment after the date of the decision.

## Discussion

In support of his motion to reverse, Hughes contends that the ALJ erred in failing to consider the fundamental nature of bipolar disorder to explain the gap in his treatment, failing to consider the effect of obesity on his other impairments, improperly assessing his residual functional capacity, and disregarding certain answers provided by the vocational expert. Hughes also contends that the Appeals Counsel erred by failing to remand the case for further proceedings. The Acting Commissioner moves to affirm, arguing that neither the ALJ nor the Appeals Council erred.

The court need not address all of the issues raised because the ALJ's reliance on the state agency physicians' opinions to assess Hughes's residual functional capacity requires that the

4

decision be reversed and remanded.[1]  The opinion of a state agency physician, including a non-examining reviewing consultant, that is based on "a significantly incomplete record" is not substantial evidence to support an ALJ's decision. Alcantara v. Astrue, 257 Fed. Appx. 333, 334 (1st Cir. 2007). On the other hand, an opinion based on an incomplete record is reliable as long as any new evidence does not show a material change for the worse in the claimant's limitations. Giandomenico v. U.S. Social Security Admin., 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017).  The ALJ bears the burden to determine and explain the import of any new evidence.  Id.  As a lay person, however, an ALJ cannot interpret raw medical data for purposes of assessing the claimant's residual functional capacity unless its effect is obvious even to a lay person. Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990).

---

[1] Contrary to Hughes's theory, however, there is no requirement that a treating physician's opinion always be given more weight than the opinions of state agency consultants and non-examining physicians.  Instead, all medical evidence must be considered and weighed under the process provided in § 404.1527 and § 416.927.  When appropriate, an ALJ may rely on the opinion of a state agency physician as medical opinion evidence. §§ 404.1527(e) & 416.927(e); SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996).

Here, the ALJ relied heavily on the opinions of state agency physicians, Dr. Rexford Burnette and Craig Stenslie, Ph.D. Dr. Burnette did a consultative examination of Hughes in December of 2012, and Dr. Stenslie provided an opinion based on a review of the record on January 2, 2013, relying primarily on Dr. Burnette's opinion.[2] The hearing before the ALJ was held in May of 2016. Therefore, more than three years passed between the time when Dr. Burnette and Dr. Stenslie provided their opinions and when the ALJ relied on those opinions.

During that time, Hughes was hospitalized in February and March of 2013 because of the effects of bipolar disorder, including his intent to commit suicide. He then received treatment at Genesis Behavioral Health Clinic for bipolar disorder, and Dr. John Richmond wrote in March of 2013 that in his opinion Hughes was totally disabled by the disorder.[3]

---

[2] Although Hughes contends that Dr. Burnette and Dr. Stenslie did not review all of the medical records that were available to them, he does not show what records were overlooked or why those records would be material to the opinions.

[3] The determination of disability is a finding that is reserved to the ALJ. For that reason, a physician's opinion that his patient is disabled is not binding for purposes of a disability determination. 20 C.F.R. § 404.1527(d)(1). On the other hand, however, the ALJ cannot disregard the opinion entirely. Dr. Richmond's opinion about the severity of Hughes's bipolar disorder is pertinent to the state agency physicians' opinions. See Ault v. Astrue, 2012 WL 72291, at *7 (D.N.H. Jan. 10, 2012).

Subsequent treatment notes at Genesis document Hughes's poor condition due to his bipolar disorder and "self injurious behaviors."

Hughes was admitted to Concord Hospital in February of 2014 for "suicidal ideation," because he planned to overdose on his medications. He was admitted to Dartmouth Medical Center in February of 2015 for suicidal ideation. He then did not resume treatment again until June of 2016.

The ALJ interprets the gap in treatment after February of 2015 as showing that Hughes had improved and did not need treatment. The ALJ cites Hughes's work at a hotel where he earned $5,587, to show that he was able to work during the gap period. The record, however, is much less positive.

During the gap period, Hughes made repeated attempts to work that were short and unsuccessful because of his erratic behavior. The hotel job cited by the ALJ lasted for only a couple of months. The ALJ states in his decision, without reference to any medical opinion or supporting medical records, that the "evidence [of working at the hotel] raises a question as to whether [Hughes] might have been able to continue that employment had he been actively engaged in treatment with

7

therapy or counseling during this time."[4] In contrast, Hughes argues that the gap in treatment is evidence of his bipolar disorder and does not show improvement.[5] Hughes, however, provides no medical evidence to support his interpretation of the gap.[6]

To the extent the ALJ relies on the gap in treatment to show that Hughes did not experience a material change for the worse after January of 2013, that explanation is insufficient in light of the entire record. The ALJ's references to occasional optimistic notes in the record also do not sufficiently show that no material change for the worse occurred after the state

---

[4] The record shows that Hughes's condition varied widely while he was in treatment, including hospitalization for suicidal plans.

[5] Hughes relies on Walsh v. Astrue, 2012 WL 941781, at *4-*5 (D.N.H. Mar. 20, 2012), as support for his theory that the gap is evidence of the severity of his bipolar disorder. In Walsh, the court explained that the ALJ did not properly resolve conflicts in the evidence by "cherry picking" positive evidence and ignoring the context due to the "episodic nature" of bipolar disorder. The court did not find that a diagnosis of bipolar disorder would necessarily explain a lack of treatment for more than a year.

[6] In fact, Hughes represents that because he had stopped taking his medication during the gap period, "the symptoms of his bipolar disorder began to cycle more rapidly." Doc. no. 8-1, at 17. As a result, it does not appear that the gap of more than a year was due to the episodic nature of Hughes's bipolar disorder.

agency physicians provided their opinions.[7]  See Walsh, 2012 WL 941781, at *4-*5.  Given the serious nature of Hughes's mental illness and the outdated state agency physician opinions that formed the basis for the ALJ's decision, the case must be remanded for further proceedings.

## Conclusion

For the foregoing reasons, the plaintiff's motion to reverse (document no. 8) is granted.  The defendant's motion to affirm (document no. 11) is denied.

The decision of the Acting Commissioner is reversed and remanded for further proceedings pursuant to Sentence Four of § 405(g).

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

February 8, 2018

cc:   Terry L. Ollila, Esq.
      T. David Plourde, Esq.
      William D. Woodbury, Esq.

---

[7] For example, the ALJ noted that Hughes was emotional during the hearing, even to the point of crying at times, but minimized that unusual behavior because he thought Hughes was generally polite and appropriate.

9